UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

SHERIF KHALIL et al.,

       Defendants.
_____/

Case No. 22-cr-20200

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING DEFENDANT NANCY HARRIS'S MOTION IN LIMINE (Dkt. 162)**

Before the Court is Defendant Nancy Harris's motion in limine to exclude evidence (Dkt. 162). A hearing on the motion was held on October 9, 2024. For the reasons that follow, the Court denies the motion.[1]

### I. BACKGROUND

Defendant Harris and others have been indicted for health care fraud and wire fraud conspiracy involving alleged kickbacks and fraudulent billings for medical testing. Am. Indictment (Dkt. 18). The Government alleges that Harris, the owner of Charlotte Pain Management Clinic (CPMC), provided her co-Defendant Kurt Schroeder with access to CPMC for the purpose of allowing Schroeder to obtain urine samples and physician orders for urine drug testing to be billed to Medicare, regardless of medical necessity. Id. ¶ 26. The Government further alleges that Harris and Schroeder obtained a physician stamp bearing another individual's

---

[1] The briefing also includes the Government's response (Dkt. 168) and Defendants' reply (Dkt. 174).

signature that Schroeder routinely used to stamp physician orders, with Harris's knowledge. Id. ¶¶ 60, 62.

On May 26, 2021, roughly one year before the indictment was filed, Harris sat for an interview with the Government. Mot. at 4. Prior to the meeting, the Government offered Harris a use-immunity agreement, which Harris signed and accepted. See Mot at 4; Immunity Agreement (Dkt. 162-1). The relevant terms of the agreement include the following:

> (2) Should Client be prosecuted, no statements made by Client during the meeting will be used against Client in the government's case-in-chief at trial or for purposes of sentencing, except as provided below.
>
> (3) The government may use any statement made or information provided by Client, or on Client's behalf, in a prosecution for false statements, perjury, or obstruction of justice, premised on statements or actions during the meeting. The government may also use any such statement or information at sentencing in support of an argument that Client failed to provide truthful or complete information during the meeting, and, accordingly: (a) that under the United States Sentencing Guidelines, Client is not entitled to a downward adjustment for acceptance of responsibility pursuant to Section 3E1.1, or should receive an upward adjustment for obstruction of justice pursuant to Section 3C1.1; and (b) that Client's conduct at the meeting is a relevant factor under 18 U.S.C. § 3553(a).
>
> (4) The government may make derivative use of any statements made or other information provided by Client during the meeting. Therefore, the government may pursue any investigative leads obtained directly or indirectly from such statements and information and may use the evidence or information subsequently obtained therefrom against Client in any manner and in any proceeding.

Immunity Agreement at 1–2.

During the interview, Harris told the Government "what she knew about the [physician stamp . . . ." Mot. at 5. After the interview, Harris produced a series of text messages between

herself and Schroeder. Id. at 7–8. She also provided the physician stamp that the Government alleges Schroeder used to stamp orders. Id. at 8.

## II. ANALYSIS

"To secure a defendant's cooperation in a criminal investigation, the government may informally grant [the defendant] immunity in exchange for [the defendant's] testimony." United States v. Fitch, 964 F.2d 571, 574 (6th Cir. 1992). As the Sixth Circuit has explained, there are two common types of immunity agreements: (i) transactional-immunity agreements and (ii) use-immunity agreements. United States v. Flemming, 658 F. App'x 777, 790 (6th Cir. 2016). "Pursuant to a transactional-immunity agreement, the government will grant a witness who has provided incriminating information . . . full immunity from prosecution for any offense to which the testimony relates." Id. (punctuation modified). "In contrast, use-immunity agreements . . . are narrower." Id. "Such agreements typically preclude only the use of the suspect's statements in a prosecution against [the suspect]." Id. (punctuation modified). Harris signed a use-immunity agreement.

Because an immunity agreement is a contract by nature, "its effect is strongly influenced by contract law principles." United States v. Pelletier, 898 F.2d 297, 301 (2d Cir. 1990). "Normal contract law standards" govern the interpretation of such agreements, Mahaday v. Cason, 230 F. App'x 542, 546 (6th Cir. 2007) (punctuation modified), and courts "look[] to the terms of the agreement itself to determine whether a party has breached," Flemming, 658 F. App'x at 790 (punctuation modified). "Unlike the normal commercial contract, however, due process requires that the government adhere to the terms of any plea bargain or immunity agreement it makes."

3

Pelletier, 898 F.2d at 302.  If an immunity agreement is breached, "the available remedies are those that the contract specifies."  Mahaday, 230 F. App'x at 546.

Citing the use-immunity agreement, Harris moves to (i) exclude statements she made during the Government interview from admission at trial, (ii) exclude the text messages and physician stamp she provided to the Government from admission at trial, and (iii) strike certain allegations from the amended indictment.  Mot. at 1–2, 13–14.  The Court addresses each request in turn.

A. **Statements During Interview**

With respect to the statements made during her interview, Harris contends that her statements are the only basis for the allegations in the amended indictment.  Mot. at 12.  According to Harris, "[t]he only person who, when interviewed, could provide any information regarding [Harris's] knowledge of the stamp being used as alleged in the Indictment was [Harris] herself." Id.  "Despite the fact that [Harris] provided this information subject to a use immunity proffer letter, the Government now intends to abrogate its agreement and use her own immunized statements against her at trial in order to prove her knowledge of the use of the stamp and implicate her in the charged conspiracy."  Id.

In response, the Government argues that Harris's motion is speculative and premature. Resp. at 2.  The Court agrees.  Harris cannot speculate as to what evidence the Government will proffer to prove its case-in-chief at trial.  The use-immunity agreement allows the derivative use of Harris's statements, Immunity Agreement at 2, and it is entirely plausible that the Government will be able to proffer evidence obtained from Harris's statements while remaining in compliance with the agreement.  Whether or not Harris is correct that no other persons could provide any information regarding her knowledge of the stamp remains to be seen.  There is no need for the

Court to enter an order requiring the Government to abide by the terms of the use-immunity agreement at trial when there has been no indication that the Government intends to breach the agreement. In fact, the Government has provided assurances to the contrary. Resp. at 2 ("For the avoidance of any doubt, the Government indeed intends to fully abide by the [use-immunity agreement] and its terms."). For this reason, Harris's first request is denied.

### B. Text Messages and Physician Stamp

The text messages and physician stamp were not prohibited under the use-immunity agreement. The plain text of the agreement prohibits use of "<u>statements</u> made by [Harris] <u>during the meeting</u>" in the Government's case-in-chief at trial or for purposes of sentencing. Immunity Agreement at 1 (emphasis added). Subsequent production of other evidence is not covered by the agreement.

Harris concedes that "the text messages are not specifically addressed in the use-immunity agreement," but argues that they were "part and parcel of Nancy Harris's statements made during the interview" because they were "voluntarily produced after the question of recent contact between Nancy Harris and Kurt Schroeder was addressed during [Harris's] interview." Reply at 7–8. Harris makes a similar argument with respect to the physician stamp, which she says was "part and parcel" of her statements made during the interview because she revealed the existence of the stamp to the Government at that time. Reply at 11.

Harris's interpretation of the use-immunity agreement goes beyond the four corners of the document, which by its terms only covers statements made during the interview. The agreement

5

says nothing about subsequent evidence produced, even if such evidence was discussed during the interview. For this reason, Harris's second request is denied.[2]

### C. Allegations in the Indictment

Harris's request to strike allegations in the indictment is also denied. Harris argues that "the Government's presentment of Nancy Harris's immunized statements to the grand jury violated the terms of the limited use immunity agreement." Reply at 2 (punctuation modified). Harris cites to the third paragraph of the agreement, which lists certain situations in which the Government may use statements made by Harris during the interview. Id. at 2–4. As Harris sees it, "[t]he use immunity agreement specifically describes the Government's unconditional permitted use of Ms. Harris' immunized statements at [P]aragraph [Three]. Significantly, the permitted uses do not include presentment of the statements to the grand jury. Were it to so provide, it would functionally not confer any immunity to the statements whatsoever." Id. at 3–4.

Even if the Government had presented those statements to the grand jury—a point the Government denies—there would have been nothing wrongful in that, because Harris's reading of the agreement is in error. Paragraph Three does not purport to be an exhaustive list of situations in which the Government may use statements made during the meeting. Paragraph Three is properly read as a list of exceptions to Paragraph Two—which bars use of Harris's statements at trial or in connection with sentencing—because Paragraph Two ends with the phrase "except as

---

[2] The Government also notes that the text messages were required to be produced pursuant to a lawful grand jury subpoena issued to CPMC, Resp. at 4–5, and that the stamp was turned over pursuant to a consent search, id. at 8. In response, Harris argues that the text messages were private messages, not business records as contemplated by the subpoena issued to CPMC. Reply at 9. As to the stamp, Harris admits that she consented to a search of CPMC but maintains that no search took place. Id. at 11. Instead, Harris contends that she voluntarily handed the stamp to investigating agents. Id. The Court need not determine whether an independent basis for the text messages or stamp exists, however, because neither piece of evidence was covered by the clear terms of the use-immunity agreement.

provided below." It serves to clarify that the prohibition of using the statements during the Government's case-in-chief at trial and at sentencing does not include a prosecution for perjury (or similar offenses) or for purposes of sentencing to show untruthfulness and thus oppose credit for acceptance of responsibility or seek an adjustment for obstruction of justice. A grand jury proceeding did not need to be listed as an explicit exception to Paragraph Two because it is clearly neither a trial nor a sentencing; that is, it need not be listed in Paragraph Three because it was not arguably part of what was prohibited under Paragraph Two.

Harris's argument that her statements could not be presented to the grand jury rests, in part, on Pelletier. But in that case, the Government had promised one defendant, before he testified before the grand jury, that "you have immunity from being prosecuted . . . for anything that you say here . . . ." Pelletier, 898 F.2d at 299. The other defendant was told that "you have immunity to the extent your testimony cannot be used against you in any criminal proceeding." Id. This "cover the waterfront" scope of immunity for both defendants in Pelletier was far more protective than the fine-tuned scope in the present case. Pelletier provides no basis to ignore the plain meaning of Harris's immunity agreement—that the use of her statements before the grand jury was not barred.

Lastly, Harris asks the Court to conduct an evidentiary hearing "in which the Government bears the burden of proving the immunized statements which were presented to the grand jury were based upon independent evidence." Reply at 6. This request is denied, because the presentment of Harris's statements before the grand jury would not have violated the use-immunity agreement, even if that had taken place.

### III. CONCLUSION

For these reasons, the Court denies Harris's motion in limine (Dkt. 162).

7

SO ORDERED.

Dated: November 8, 2024                    s/Mark A. Goldsmith
Detroit, Michigan                          MARK A. GOLDSMITH
                                           United States District Judge